**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ROSANNA N. PILACCIO,

                Plaintiff,             **MEMORANDUM OF**
                                    **DECISION & ORDER**
         -against-             16-cv-1251 (ADS)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**Fusco, Brandenstein & Rada, PC**
*Attorneys for the Plaintiff*
180 Froehlich Farm Boulevard
Woodbury, NY 11797
        By:    Aba Heiman, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
        By:    Candace Scott Appleton, Assistant United States Attorney

**SPATT, District Judge**:

      On March 14, 2016, the Plaintiff Rosanna N. Pilaccio (the "Plaintiff" or the "claimant")

commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the

"Act"), challenging a final determination by the Defendant, the Commissioner of the Social

Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive

Social Security disability insurance benefits.

      Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil

Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons

that follow, the Plaintiff's motion is denied in its entirety and the Defendant's motion is granted in its entirety.

## I. BACKGROUND

The Plaintiff applied for disability insurance benefits on August 6, 2014, alleging that she had been disabled since July 7, 2014. The Plaintiff claimed that she was disabled because of blindness in her right eye; vision impairment in her left eye; and a brain tumor.

Her claim was denied on January 23, 2015, and she requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge April M. Wexler (the "ALJ") on November 12, 2015. On December 16, 2015, the ALJ issued a written decision in which she found that the Plaintiff was not disabled under the Act.

The Plaintiff requested a review by the Appeals Council, who denied her request on January 19, 2016. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On March 14, 2016, the Plaintiff filed the instant action. Both parties submitted the matter as fully briefed to the Court on November 21, 2016.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges presently raised by the Plaintiff. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Applicable Law

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess*

*v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed *infra,* that the claimant could perform, taking into account, *inter alia,* the claimant's

residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

## B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An

ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

## C. Application to the Facts Of This Case

The Plaintiff asks this Court to remand the case back to the Commissioner either solely for the calculation of benefits or for further proceedings to remedy what the Plaintiff believes was a deprivation of a full and fair hearing. *See Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004) (stating that before a court analyzes the merits of a Social Security case, "[t]he reviewing court 'must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act'" (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990) alterations and further internal citations omitted))).

The Plaintiff contends that she was deprived of a full and fair hearing because the ALJ afforded insufficient weight to the opinions of two individuals, and failed to account for the Plaintiff's need for breaks. The two individuals whom the Plaintiff believes should have been afforded more weight are Andrew Pasternak ("Pasternak"), a vocational expert retained by Plaintiff's counsel; and Dr. Leslie Fine ("Dr. Fine"), a psychologist also retained by the Plaintiff's

counsel who examined her on one occasion. In opposition, the Defendant argues that the ALJ afforded them the proper weight, and that the ALJ was not required to assign controlling weight to them.

The Court notes that the Defendant responded to two arguments that were never raised by the Plaintiff: namely, that the ALJ erred in giving only some weight to Nurse Practitioner Michele Kelly ("N.P. Kelly"), who had treated the Plaintiff for nine years by the time she filed for disability benefits; and that the ALJ incorrectly evaluated the Plaintiff's credibility.

The Plaintiff only referenced N.P. Kelly's opinion to contrast it with that of Dr. Paul Herman—a consultative psychologist—and to support her contention that the record requires remand solely for the determination of benefits. (Pl.'s Mem. of Law at 15–16; Pl.'s Reply Mem. of Law at 2–3). Nowhere in her papers does the Plaintiff assert that the ALJ erred in affording only some weight to N.P. Kelly's opinion.

The Plaintiff similarly does not claim that the ALJ incorrectly evaluated the Plaintiff's credibility. The Plaintiff only raised her credibility in her reply brief to respond to what the Plaintiff perceived as the Defendant's attacks on the Plaintiff's credibility in the Defendant's initial brief. (Pl.'s Reply Mem. of Law at 5).

Therefore, the Court will not address either of these arguments.

### 1. As to the Weight Assigned to the Opinions of Pasternak and Dr. Fine

Under 20 C.F.R. § 404.1527(c) ALJs are required to weigh and evaluate "every medical opinion." When assigning weight to a medical opinion, ALJs consider the following factors: the nature of the examining relationship; whether or not the medical opinion was made by a treating source; length of treatment relationship and frequency of examination; supportability; consistency;

specialization; and "other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013),

Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

"Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2).

Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

20 C.F.R. § 404.1502 lists the "acceptable medical sources" . . . "who can provide evidence to establish an impairment." While the Act was amended effective March 27, 2017 to include nurses as acceptable medical sources, the Plaintiff is unable to claim the benefit of the amendment because she filed her claim before that date. *See* 20 C.F.R. § 404.1502(a)(7) (stating that licensed advanced practice registered nurses are considered acceptable medical sources "only with respect to claims filed on or after March 27, 2017" (internal citation omitted)).

As to opinions from medical sources who are not acceptable medical sources and from nonmedical sources, the Act states:

> Opinions from medical sources who are not acceptable medical sources and from
> nonmedical sources may reflect the source's judgment about some of the same

issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors [applied to medical opinions] not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1). Taking these rules into account, the Act states that ALJs "generally should explain the weight given to opinions" from medical sources who are not acceptable medical sources and from nonmedical sources. 20 C.F.R. § 404.1527(f)(2).

In sum, ALJs are required to give controlling weight to a plaintiff's treating physician, or give good reasons for not doing so; evaluate and assign weight to every medical opinion; and explain the weight given to medical sources who are not acceptable medical sources and from nonmedical sources.

### a. Whether the ALJ Assigned Proper Weight to Dr. Fine's Opinion

The Plaintiff argues that the ALJ committed legal error by arbitrarily and capriciously ascribed "no weight" to Dr. Fine's consultative opinion, while according "good weight" to Dr. Paul Herman's opinion, who conducted a consultative examination at the Commissioner's request.

The ALJ assigned "no weight" to the opinion of Dr. Fine. Dr. Fine conducted a single consultative examination on October 19, 2015. Dr. Fine reviewed the Plaintiff's medical and psychiatric history, family/social history, and medical records; and conducted a "mental status examination." In her mental status examination, Dr. Fine noted that the Plaintiff "related in a cooperative manner;" spoke in clear, relevant, and goal-directed patterns; "[h]er affect was

8

appropriate to expressed ideation, was constricted and somewhat intense[;] [h]er mood was somewhat depressed and anxious[;]" she did not display any evidence of thought disorder or psychosis; "[h]er attention and concentration were intact[;] [s]he was able to remember 3 out of 3 words in 5 minutes. . . . [and] [her] [i]nsight and judgment were fair." (R. at 407). Dr. Fine's opinion was that the Plaintiff suffered from a "chronic depressive disorder which has been exacerbated by her recent brain surgery and resultant visual impairment . . . ." (*Id.*). She further opined that it was her opinion that the Plaintiff "is disabled for employment by both her medical impairments as well as her chronic [d]epressive [d]isorder." (*Id.* at 408).

As an initial matter, the ALJ was justified in disregarding Dr. Fine's opinions that the Plaintiff is disabled and cannot work. Findings that "a claimant is disabled and cannot work . . . are reserved to the Commissioner," and a treating physician's opinion on these points is not afforded controlling weight. *Snell,* 177 F.3d at 133 (internal citations omitted); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) (stating that opinions as to, inter alia, whether the plaintiff is disabled and her residual functional capacity are reserved to the commissioner). The ALJ "considers the data that physicians provide but draws his or her] own conclusions as to whether those data indicate disability ." *Snell,* 177 F.3d at 133.

Furthermore, the ALJ was not required to ascribe controlling weight to Dr. Fine's opinions because she was not one of the Plaintiff's treating physicians. She conducted one consultative examination. In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419. This is because "consultative exams are often brief . . . and, at best, only give a glimpse of the claimant on a single day." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). As stated above, a treating source is someone who has had an ongoing

treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2). Dr. Fine's relationship with the Plaintiff was neither ongoing nor related to treatment.

As a non-treating medical opinion, the ALJ was only required to ascribe weight to Dr. Fine's statements and to give good reasons after considering the factors in 20 C.F.R. §404.1527(c). The ALJ was entitled to assign no weight to Dr. Fine's opinion, as long as the reasons were adequately explained. *See, e.g., Wettlaufer v. Colvin*, 203 F. Supp. 3d 266, 279 (W.D.N.Y. 2016) ("The ALJ also properly weighed the relevant factors and gave "good reasons" for affording "no weight" to [the treating physician's] opinion."); *Rorick v. Colvin*, 220 F. Supp. 3d 230 (N.D.N.Y. 2016) ("Here, the hearing officer's decision to give [the treating physician's] opinion no weight is supported by the record, and the hearing officer adequately explained the reasoning behind discrediting her opinion."); *see also Melendez v. Astrue*, 630 F. Supp. 2d 308, 316 (S.D.N.Y. 2009) (stating that the ALJ "acted within the scope of his authority by rejecting the analyses of the other consultative physicians. The ALJ's determination was reached after consideration of the relevant evidence and conflicts in the record were resolved according to reasonable judgments.").

While the ALJ did not explicitly consider the factors in 20 C.F.R. §404.1527(c), the Court "deduce[s] that the ALJ considered the [] physician's opinion and explained the consistency of [the physician's] opinion 'with the record as a whole,'" and therefore "the ALJ applied the substance of the [factors]." *Halloran*. 362 F.3d at 31–32 (internal citations omitted); *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (stating that "[a]lthough the ALJ did not describe in detail her rationale, we can infer from the decision" the weight she attributed to each doctor's opinion). Here, the ALJ said that Dr. Fine's opinion was not supported by the record, and was not helpful in that it did not give specific functional limitations. The latter point is instructive, because in the Court's view, Dr. Fine's opinion was so conclusory and "vague

as to render it useless in evaluating" the Plaintiff's residual functional capacity. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) *superceded on other grounds* 20 C.F.R. § 404.1560(c)(2); *see also Selian*, 708 F.3d at 421 ("[The consultative examiner's] opinion is remarkably vague. What [the consultative examiner] means . . . is left to the ALJ's sheer speculation . . . .").

As the ALJ stated in her written decision, Dr. Fine's opinion was not supported by the evidence in the record. The Plaintiff noted in her reports and in her testimony that she was able to care for herself and her one-year old child. *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that substantial evidence supported the ALJ's finding that the plaintiff's subjective complaints of pain were insufficient to establish disability where "the ALJ correctly noted that [the [plaintiff] was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

The Plaintiff's treating neurologist, Dr. Agnieszka Kowalska, noted on two occasions that the Plaintiff's mental capabilities were within normal limits. Dr. S. Shapiro, a state agency medical consultant whose specialty is psychiatry, similarly found that the Plaintiff only had mild restrictions related to activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Shapiro spoke with N.P. Kelly, who apparently told him that, from a psychiatric standpoint, the Plaintiff had the skills for substantial gainful activity. Dr. Shapiro found that the Plaintiff had various other limitations, (R. at 69–71), but found that her only marked limitations related to interacting with the general public. This detailed functional assessment differed greatly from Dr. Fine's conclusions. Although the Plaintiff argues that the ALJ did not explicitly rely on Dr. Shapiro's findings to support his conclusions, "[a]n ALJ need not recite every

piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam))).

Dr. Fine's opinion also contradicted Dr. Herman's opinion. Dr. Herman concluded that there was no evidence of significant limitations related to the Plaintiff's ability to follow and understand simple directions and instructions; perform simple tasks; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks; make appropriate decisions; and relate adequately with others. However, Dr. Herman was concerned about her ability to deal appropriately with stress. Dr. Herman's conclusions were consistent with his examination, in which he noted that the Plaintiff's attention and concentration were intact; her cognitive functioning appeared to be average; her general fund of information was appropriate to her experience; the Plaintiff did not report any significant difficulties with activities of daily living; and the Plaintiff stated that she was able to socialize, paint, help with household chores and take care of her child.

The ALJ afforded "good weight" to Dr. Herman's opinion, which he was entitled to do upon providing good reasons. The ALJ held that Dr. Herman's opinion was consistent with the doctor's examination of the Plaintiff, and supported by other evidence.

While the ALJ did not rely solely on Dr. Herman's opinion, it is permissible for an ALJ to rely on an examining consultative physician's opinion if the opinion is supported by substantial evidence. *See, e.g., Smith v. Colvin*, 17 F.Supp.3d 260, 268 (W.D.N.Y.2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.' This is particularly so where the consultant directly examines the applicant.") (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y.2005)); *Vanterpool v. Colvin*,

No. 12-CV-8789 VEC SN, 2014 WL 1979925, at *16 (S.D.N.Y. May 15, 2014) (finding the ALJ did not err in affording greater weight to the opinion of the consultative physician where the opinion was more consistent with the treating physician's medical records). The ALJ did not give controlling weight to Dr. Herman's opinion; it is not the sole source of substantial evidence supporting the ALJ's decision. While his opinion was supported by other substantial evidence in the record, the ALJ only afforded it "good weight."

Therefore, the Court finds that the ALJ did not abuse her discretion by according no weight to the medical opinion of Dr. Fine, and the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) based on that argument is denied.

### b. As to Whether the ALJ Ascribed Proper Weight to Pasternak's Opinion

The Plaintiff similarly argues that the ALJ committed legal error by assigning "no weight" to the Plaintiff's retained vocational expert while seemingly relying on the impartial vocational expert who testified at the hearing. The Defendant contends that the ALJ was not required to ascribe a certain weight to Pasternak's opinion, and that the ALJ gave good reasons for affording it no weight. The Court finds that the ALJ did not commit error in this regard.

The Act circumscribes the testimony of a vocational expert as follows:

A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

Here, Pasternak reviewed the Plaintiff's medical records and background, conducted a battery of tests and came to several conclusions. He concluded that the Plaintiff "is functionally incapable of performing any reasonable occupation, even at the [s]edentary level of physical demand," (R. at 272), and that there was "[n]o doubt there has been a significant decline in her vocational functioning from previous levels, attributed to the cumulative effects of her conditions." (*Id.* at 273). The ALJ afforded no weight to Pasternak's opinion because it was "inconsistent with the evidence as a whole, including the claimant's own testimony at the hearing, the treatment records from her neurosurgeon and the ophthalmological exams." (*Id.* at 25).

The ALJ was not required to give a certain weight to Pasternak's opinion, because he was a vocational expert, and not a treating medical source. "While the ALJ is free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Slattery v. Colvin*, 111 F. Supp. 3d 360, 372 (W.D.N.Y. 2015) (citing *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008)). The ALJ was only required to ascribe weight to Pasternak's opinion, utilizing any of the applicable factors listed in 20 C.F.R. § 404.1527(c); *see also Oaks v. Colvin*, No. 13–CV–917–JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) ("While the Commissioner is thus free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, those decisions should be explained." (internal citations and quotation marks omitted)). The ALJ found that Pasternak's opinion was neither supported by nor consistent with the evidence, and that he offered evidence outside of his specialization.

The ALJ gave good reasons for affording no weight to Pasternak's opinion. The Plaintiff noted in her functional report on September 8, 2014, that she could care for her personal needs, prepare easy meals, clean her house, and do laundry. She testified at the hearing that she was able

to serve as the primary caregiver for her one year old daughter until 5:00 p.m. everyday. The Plaintiff's treating neurologist, Dr. Agnieszka Kowalska, noted on August 15, 2014, and on October 24, 2014, that the Plaintiff's memory, attention/concentration, fund of knowledge, repetition, naming, spontaneous speech, fluency, and comprehension were all within normal limits.

Also, Pasternak's opinions completely contradicted those of the Plaintiff's ophthalmologist, who found that the Plaintiff could "constantly" perform activities that involved near and far acuity, depth perception, accommodation, color vision, and field of vision with her left eye; that the Plaintiff would never experience symptoms severe enough to interfere with her attention and concentration; and that she could work with small objects such as those involved in doing sedentary work. Pasternak's opinion also was in conflict with the opinions of Dr. Shapiro and Dr. Herman.

In the Court's opinion, Pasternak exceeded the bounds of what a vocational expert may offer into evidence. His statements were not restricted to the "physical and mental demands of the claimant's past relevant work," and his conclusion that the Plaintiff could not work in any job was not in response "to a hypothetical question about whether a person with the" Plaintiff's limitations "can meet the demands of the [Plaintiff's] previous work . . . ." 20 C.F.R. § 404.1560(b)(2); *see also Uhlig v. Apfel*, No. 97 CIV.7629SHS, 1999 WL 350862, at *11 (S.D.N.Y. June 2, 1999) ("The ALJ correctly noted that vocational experts are not acceptable medical sources that can identify and assess a claimant's alleged impairments. Vocational experts are utilized to determine which jobs an individual with particular skills can perform in light of an impairment or impairments if he or she cannot perform past work, and whether such alternative jobs are available.").

Pasternak went so far in his conclusions as to say that the Plaintiff's treating ophthalmologist, Dr. Lawrence Buono's questionnaire was "contradictory" because depth

perception "requires the use of both eyes." (R. at 273). In this respect, Pasternak's opinion conflicted with the Plaintiff's own treating neuro-ophthalmologist. It similarly was not supported by the medical opinion of Dr. Bernard Zuckerman, a consultative ophthalmologist, who said that the Plaintiff could see fine print, fine objects and use a computer. Dr. Zuckerman further concluded that Plaintiff's limitations merely prevented her from doing any activities that required binocular vision, and that she should stay away from moving machinery where footing may be dangerous.

Therefore, the ALJ did not err by affording no weight to Pasternak's opinion. Accordingly, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) on that basis is denied.

## 2. As to Whether the ALJ's Decision at Step Five Was Supported By Substantial Evidence

The Plaintiff states that the ALJ's decision at step five is not based on substantial evidence. Again, at step five the Commissioner determines whether the Plaintiff can perform other work besides her past job, taking into account the Plaintiff's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77. Specifically, the Plaintiff argues that "the ALJ does not address the extent to which [the Plaintiff] is off task in the [d]ecision, suggesting the [d]ecision is not based upon substantial evidence." (Pl.'s Mem. of Law at 13). The ALJ asked the impartial vocational expert whether the Plaintiff could work if her impairments resulted in her being off task 15% of the time, but did not conclude that the Plaintiff would be off task 15% of the time.

Believing that the Plaintiff's argument relates to the hypothetical presented to the impartial vocational expert, the Defendant argues that "the ALJ was not required to submit to the vocational expert every limitation alleged by Plaintiff or her treating sources, but must only convey all of Plaintiff's credibly established limitations." (Def.'s Reply Mem. of Law at 7).

The Plaintiff does not argue that the ALJ erred in the hypothetical presented to the impartial vocational expert—instead, the Plaintiff points to the hypothetical as evidence that the ALJ erred in failing to address to what extent the Plaintiff would be off-task. The Plaintiff wrote that "the ALJ clearly relied upon the vocational opinion of Mr. Meola . . . but only to the extent that his testimony supported her conclusion that Ms. Pilaccio was employable as a Bagger, Labeler or Garment Folder. The ALJ's reliance upon Mr. Meola's testimony was only based upon what she elicited on direct and doesn't even mention what he admitted on cross. Curiously, while the ALJ asked Mr. Meola whether Ms. Pilaccio could work if her impairments resulted in her being off task 15%, and he responded in the negative, the ALJ does not address the extent to which Ms. Pilaccio is off task in the Decision, suggesting the Decision is not based upon substantial evidence." (Pl.'s Mem. of Law at 13).

In her reply brief, the Plaintiff states that the "Defendant excuses the ALJ for not mentioning, in her hypothetical summarizing the facts of this case, that 'plaintiff would need 20 to 30 minute breaks when trying to read or concentrate' because it only came up once in the record in a report from plaintiff's optometrist, Dr. [Kristin] Protosow." (Pl.'s Reply Mem. of Law at 6). As stated above, the Plaintiff used her reply brief to respond to the Defendant's arguments, not to raise new points of contention. Nevertheless, whether the Plaintiff's argument relates to the hypothetical presented to the expert, or to the ALJ's finding at step five, the Court finds that the ALJ's decision was supported by substantial evidence.

At step five in the evaluation, the ALJ was required to perform a two part process—to first assess the Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v.*

*Campbell,* 461 U.S. 458, 460, 103 S .Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983). To make this determination, an ALJ can apply the Medical Vocational Guidelines or take testimony from a vocational expert. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

"When the testimony of a vocational expert is utilized, as here, the ALJ must present a hypothetical that incorporates all of [p]laintiff's impairments. If the ALJ fails to pose hypothetical questions that include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Yannone v. Astrue*, No. 06CIV.15502SCRGAY, 2010 WL 743963, at *7 (S.D.N.Y. Mar. 3, 2010) (quoting *Brodbeck v. Astrue*, No. 505-CV-0257 NAM/GHL, 2008 WL 681905, at *18 (N.D.N.Y. Mar. 7, 2008)). "[A]n ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152.

However, the *McIntyre* court held that a failure to explicitly include such limitations is harmless error if "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited "to include only unskilled work; or (2) the hypothetical otherwise implicitly accounted for a claimant's limitations in concentration, persistence, and pace." *Id.* (internal alterations, citations, and quotation marks omitted).

First, as the Plaintiff pointed out, the ALJ did include in her hypothetical question to the impartial vocational expert that "such an individual would need to be off task 15 percent of the

workday." (R. at 23). Therefore, the Court finds that the ALJ did include in her hypothetical the possibility that the Plaintiff would need breaks.

The Plaintiff contends that, in her decision, the ALJ did not account for the Plaintiff's apparent need for breaks. Again, the Court disagrees. The ALJ explicitly held that "[t]he simple unskilled nature of the jobs described in the residual functional capacity accounts for any issues she may have with concentration due to her depression and anxiety." (R. at 26). To that end, Dr. Protosow, the Plaintiff's optometrist, stated that the Plaintiff would only need breaks when reading. The jobs listed by the vocational expert were garment folder, bagger and labeler—none of which require reading. *See* Dictionary of Occupational Titles ("DOT") 582.687-010; 920.687-126; 719.687-066.

"Here, substantial evidence in the record demonstrates that [the Plaintiff] can engage in simple, routine, low stress tasks, notwithstanding her physical limitations and her limitations in concentration, persistence, and pace. . . . [T]he ALJ sufficiently accounted for the combined effect of [the Plaintiff's] impairments. *McIntyre*, 758 F.3d at 152.

The Plaintiff's arguments illustrate that, apparently, she does not fully understand the important standard under which this Court operates. The Plaintiff contends that the "ALJ's decision [] discounted substantial evidence . . . ." (Pl.'s Reply Mem. of Law at 8). As stated above, this Court does not decide whether there is substantial evidence to support the Plaintiff's position; it instead analyzes whether the ALJ's decision is corroborated by substantial evidence. *See Bonet*, 523 F. App'x at 59 (stating that the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" (emphasis in original)).

While there may be substantial evidence to support the Plaintiff's contention that she requires breaks throughout the day, there is also substantial evidence to support the ALJ's finding that the Plaintiff will be able to work without unreasonable interruption in the jobs listed by the impartial vocational expert. Several doctors confirmed this important element. Dr. Buono, the Plaintiff's treating neuro-ophthalmologist, noted in his residual functional capacity questionnaire that the Plaintiff would never experience symptoms severe enough to interfere with attention and concentration. Dr. Kowalska, the Plaintiff's treating neurologist, found that the Plaintiff's attention and concentration were within the normal limits. Dr. Shapiro, the state agency consulting psychiatrist, said that the Plaintiff only had mild difficulties in maintaining concentration, persistence or pace. Dr. Herman, the consultative psychologist, also noted that the Plaintiff's attention and concentration were intact. Although Dr. Fine's opinion was inconsistent, she did note that the Plaintiff's attention, concentration, and memory were intact.

The Plaintiff does not contend that the ALJ's other findings were error or unsupported by substantial evidence. Therefore, the Court finds that the ALJ's finding at the fifth step that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform is supported by substantial evidence, and the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) on that basis is denied.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied, and the Defendant's motion for judgment on the pleadings dismissing the complaint is granted. The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

June 26, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge